**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GURVINDER GHUMAN;<br>PARMINDER GHUMAN,<br><br>              Plaintiffs,<br><br>   v.<br><br>WELLS FARGO BANK, N.A. dba<br>AMERICA'S SERVICING COMPANY;<br>and DOES 1 through 100, inclusive,<br><br>              Defendants. | 1:12-cv-00902-AWI-BAM<br><br>ORDER RE: MOTION FOR<br>PRELIMINARY INJUNCTION<br><br>(Doc. 7) |

**I. INTRODUCTION**

Plaintiffs Gurvinder Ghuman and Parminder Ghuman (hereinafter referred to as "Plaintiffs") have filed a motion for preliminary injunction enjoining defendant Wells Fargo Bank, N.A. dba America's Servicing Company from conducting a foreclosure sale of real property located at 1644 East El Paso, Fresno, California 93720. For reasons discussed below, the motion shall be denied.

**II. FACTS AND PROCEDURAL BACKGROUND**

On June 1, 2012, Plaintiffs filed their complaint against defendants Wells Fargo Bank, N.A. dba America's Servicing Company ("Wells Fargo") and Does 1 through 100, inclusive, asserting causes of action for (1) declaratory relief, (2) contractual breach of the implied covenant of good faith and fair dealing, (3) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., (4) violation of the Real Estate Settlement Procedures Act, 1 U.S.C. §§ 2601 et seq., (5) rescission, (6) fraud, (7) "Unfair and Deceptive Business Act Practices," (8) breach of fiduciary duty and (9) "unconscionability – UCC-2-3202." On June 7, 2012, Plaintiffs filed an ex parte motion for a temporary restraining order and preliminary injunction enjoining Wells Fargo and its agents, servants and employees from conducting a foreclosure sale of real property located at 1644 East El Paso, Fresno, CA 93720.

In an order issued June 8, 2012, the Court denied Plaintiffs' motion for a temporary restraining order inasmuch as Plaintiffs sought to proceed on an ex parte basis, but set an expedited briefing schedule and hearing on Plaintiffs' motion for preliminary injunction. *Ghuman v. Wells Fargo Bank, N.A.,* slip copy, 2012 WL 2090320 (E.D.Cal. June 8, 2012).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs requests for preliminary injunctions. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.' " *Id*. at 24 (internal citations omitted). The Ninth Circuit has adopted a sliding scale approach to preliminary

2

injunctions in which an injunction may issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.' " *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2000)).

## IV. DISCUSSION

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds Plaintiffs have failed to establish a likelihood of success on the merits. Plaintiffs first contend a preliminary injunction should issue because Mortgage Electronic Registration Systems, Inc. (MERS), the beneficiary of the deed of trust securing the East El Paso property, lacked authority to make an assignment of the deed to Deutsche Bank. As to this claim, Plaintiffs allege as follows:

> "On August 29, 2005, Plaintiffs signed a negotiable promissory note (the 'Note'), in the amount of $407,600.00, loan number #1127078466, in favor of Secured Bankers Mortgage Co. ('Lender') . . . . [¶] On the same day, to secure the Note, Plaintiffs signed a Deed of Trust (the 'Deed of Trust'), which conveyed a security interest in the Property to Lender. The Deed of Trust was recorded on September 2, 2005 as Instrument No. 2005-0206533 of Official Records in the Office of the Recorder of Fresno County, California. The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ('MERS') as the beneficiary under the Deed of Trust, acting solely as 'nominee' for Lender and Lender's successors and assigns."

Plaintiffs further allege:

> "On or about November 30, 2005, Lender sold and transferred its interest in the Plaintiffs' Note (but not Lender's interest in and to the Deed of Trust) to the $369,641,876 Morgan Stanley Mortgage Loan Trust 2005-10, a New York mortgage backed securities trust (the 'Morgan Stanley Trust'), which was registered with the Securities and Exchange Commission ('SEC') . . . . [¶] . . . [¶] On or about December 7, 2007, . . . Lender ceased conducting business. At the time Lender ceased operations, the Note had been transferred . . . to the Morgan Stanley Trust, but the Deed of Trust was never transferred."

Plaintiffs further allege that on May 27, 2009, MERS purported to assign the deed of trust to Deutsche Bank and recorded said assignment as instrument #20090071467 in the official records of

3

the Fresno County Recorder.[1] Plaintiffs now contend a beneficiary under a deed of trust must have an interest in the underlying promissory note to assign the deed, and that because Secured Bankers Mortgage Co. (Secured Bankers) (1) sold Plaintiffs' note to the Morgan Stanley Trust and (2) no longer does business, MERS could not have assigned the deed to Deutsche Bank. From this, Plaintiffs assert subsequent assignments of the deed would necessarily have been wrongful such that Wells Fargo, the current mortgagee, cannot foreclose on Plaintiffs' property. Plaintiffs have provided no authority – and the Court's research reveals no authority – to support this proposition.

First, "since the assignment of the debt (the promissory note), as opposed to the security (the [deed of trust]), commonly is not recorded, the lender could have assigned the note to the beneficiary in an unrecorded document not disclosed to plaintiffs." *Herrera v. Federal National Mortgage Association,* 205 Cal.App.4th 1495, 141 Cal.Rtpr.3d 326, 334 (2012) (citing *Fontenot v. Wells Fargo Bank, N.A.,* 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011)). Second, while Plaintiffs contend Secured Bankers "ceased conducting business," no competent evidence of this has been provided. Plaintiffs have also provided no argument or evidence to explain how the situation might have affected Secured Bankers's ability to transfer the loan. Third, notwithstanding a similar absence of evidence in the record to show Secured Bankers's interest in the promissory note was in fact sold and transferred to the Morgan Stanley Trust, the deed of trust expressly provided as follows:

> "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . . ."

The deed of trust further provided:

---

[1] Plaintiffs have not provided a copy of the recorded assignment. Nevertheless, the Court, pursuant to Plaintiffs' motion for preliminary injunction, has consulted the official Fresno County Recorder website (http://www.co.fresno.ca.us) and notes that on May 27, 2009, document #2009-0071467-00 appeared to have been recorded showing MERS, as grantor, assigned Plaintiffs' trust deed to Deutsche Bank National Trust Company as grantee.

4

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling this security instrument."

Pursuant to the foregoing language, Plaintiffs agreed that MERS had the right to exercise all interests and rights held by Secured Bankers and its successors and assigns, including the right to assign the deed of trust. *See Herrera, supra,* 141 Cal.Rptr.3d at 333, 335 (citing *Fontenot, supra,* 198 Cal.App.4th at 262-63, 268, 288). Plaintiffs have not pointed to any language in the deed prohibiting MERS's assignment of all beneficial interests under the deed to Deutsche Bank.[2]

Plaintiffs further allege that on April 29, 2009, NDEx West, LLC (NDEx) "recorded as Instrument #2009-0057563 of Official Records in the Office of the Recorder of Fresno County, California a 'Notice of Default and Election to Sell Under Deed of Trust' on the Plaintiff's [sic] Property . . . ." Plaintiffs then suggest an injunction should issue because NDEx did not have authority to initiate foreclosure proceedings pursuant to the deed of trust because the promissory note did not accompany the deed of trust in the chain of title. The Court does not agree. *Debrunner v. Deutsche Bank Nat. Trust Co.,* 204 Cal.App.4th 433, 138 Cal.Rptr.3d 830 (2012), explains why.

Stephen Debrunner was a private investor who, with co-investors in March 2006, extended

---

[2] The *Herrera* court concluded that even if the plaintiffs could allege facts showing MERS's assignment of the deed of trust was void, they still had to show they were prejudiced by the assignment: "[T]here is no showing of prejudice, even assuming there were procedural defects in the assignment of the [deed of trust] from MERS to OneWest . . . . According to the facts alleged in the [second amended complaint] and attached documents, plaintiffs borrowed $318,500 plus interest; plaintiffs agreed that MERS, as beneficiary nominee, had the right to exercise all rights of the lender, including foreclosing and selling plaintiffs' property; MERS assigned its beneficiary interest to OneWest; plaintiffs defaulted on their loan and owed $15,200 on their mortgage; plaintiffs did not tender payment and cure the default; OneWest purchased IndyMac Federal's assets; OneWest assigned the DOT and note to Fannie Mae; Fannie Mae initiated foreclosure through the trustee, Trust Corps; and Fannie Mae purchased plaintiffs' property during the nonjudicial foreclosure sale. If MERS lacked authority to assign the [deed of trust] and note to OneWest and, in turn, OneWest lacked authority to assign the [deed of trust] and note to Fannie Mae, the true victims were not plaintiffs but the lender." *Herrera, supra,* 141 Cal.Rptr.3d at 336 (citing *Fontenot, supra,* 198 Cal.App.4th at 272). Likewise, Plaintiffs have alleged no prejudice from MERS's assignment here.

5

a loan of $675,000 to Barbara Chiu and Shimin Xu secured by a deed of trust on a home in Los Altos. (Chiu executed a promissory note and second deed of trust in favor of Debrunner and his co-investors.) *Debrunner, supra,* 204 Cal.App.4th at 436. At the time Chiu was already a trustor on the first deed of trust on the property, having previously borrowed $975,000 from Quick Loan Funding, Inc. (Quick Loan); the trustee on the first deed of trust was Chicago Title Company. In April 2006 Quick Loan assigned the first deed of trust and corresponding promissory note executed by Chiu to Option One Mortgage Corporation (Option One), which subsequently assigned both the deed and note to FV-1, Inc. (FV-1). On September 2, 2008, FV-1 assigned the first deed of trust to Deutsche Bank, with Saxon Mortgage Services, Inc. (Saxon) acting as " 'attorney in fact.' " The deed was notarized and recorded on September 21, 2009 and January 5, 2010, respectively. *Id*.

In January 2008, Debrunner and his co-investors filed a notice of default, presumably for Chiu's inability to remain current on the second-position loan. *Debrunner, supra,* 204 Cal.App.4th at 436. A trustee's sale of the Los Altos property was scheduled for May 2008, but was delayed after Chiu's business entity petitioned for Chapter 11 bankruptcy protection in June 2008. The bankruptcy court granted Debrunner's and his co-investors' motion for relief from the bankruptcy stay, allowing them to foreclose upon the property and obtain a trustee's deed upon sale in March 2009. *Id*. But back in August 2008, before the sale was completed, Saxon – the servicer on the first-position loan – had also filed a notice of default, which was rescinded because of the bankruptcy proceedings. Deutsche Bank – the assignee of the first deed of trust – moved for relief from the bankruptcy stay in July 2009 in order to file a new notice of default, although its motion was taken off calendar after the bankruptcy case was closed in August 2009. Old Republic Default Management Services (Old Republic), the foreclosure trustee, then recorded a new notice of default on the Los Altos property in September 2009. In the accompanying Fair Debt Collection Practices Act Notice, Old Republic named Deutsche Bank as the creditor and Saxon as its " 'attorney-in-fact' " and informed the debtor that payment to stop the foreclosure could be made to Saxon. *Id*. On January 5, 2010, the same day the assignment from FV-1 to Deutsche Bank was recorded, a " 'Substitution of Trustee' " from

Chicago Title Company to Old Republic was recorded. This document had been signed and notarized by Saxon on behalf of Deutsche Bank on September 2, 2008. *Id.* at 436-37.

In November 2009, Debrunner brought an action against Deutsche Bank, Saxon and Old Republic to stop the foreclosure proceedings on the first deed of trust, contending the defendants had no right to foreclose because Deutsche Bank did not have physical possession of or ownership rights to the original promissory note executed by Chiu. *Debrunner, supra,* 204 Cal.App.4th at 437. Deutsche Bank and Saxon demurred to the complaint, contending possession of the original note was not required under California's non-judicial foreclosure statutes, Cal. Civ. Code §§ 2924 et seq. In opposition, Debrunner contended that "any assignment of the deed of trust was immaterial because a deed of trust 'cannot be transferred independently' of the promissory note, which must be 'properly assigned' and attached," and that " '[a] deed of trust standing alone is a nullity,' and thus cannot provide authority for a lender to foreclose." *Id*. The trial court sustained Deutsche Bank's and Saxon's demurrer without leave to amend, *id.* at 438, and the Court of Appeal affirmed.

On appeal, Debrunner reiterated his argument that an assignment of the deed of trust was ineffective and a legal nullity unless the assignee also physically received the promissory note and endorsed it, and that the beneficiary of the deed of trust must physically possess the note to initiate foreclosure proceedings. *Debrunner, supra,* 204 Cal.App.4th at 439. The court rejected this contention: "As the parties recognized, many federal courts have rejected this position, applying California law. All have noted that the procedures to be followed in a nonjudicial foreclosure are governed by sections 2924 through 2924k, which do not require that the note be in the possession of the party initiating the foreclosure. [Citations.] We likewise see nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note. They set forth a 'comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the

property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] Notably, section 2924, subdivision (a)(1), permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.' The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid." *Debrunner, supra,* 204 Cal.App.4th at 440.

Plaintiffs further contend the April 29, 2009 notice of default and September 18, 2009 notice of sale recorded by NDEx were invalid because no substitution of trustee was ever recorded naming NDEx as the trustee under the deed of trust.  Not so.  Pursuant to Plaintiffs' motion, the Court has consulted the official Fresno County Recorder website (http://www.co.fresno.ca.us) and notes that on June 29, 2009 (two months after the notice of default but three months before the notice of sale), a substitution of trustee naming Deutsche Bank National Trust Company as grantor and NDEx as grantee appeared to have been recorded as document #2009-00879966-00.  To the extent Plaintiffs intend to suggest a preliminary injunction should issue because the notice of default recorded by NDEx was defective in that it listed NDEx as the trustee even though there was no recorded substitution of NDEx as a trustee *at the time*, the claim likewise fails.  An identical argument was raised and rejected in *Debrunner*.  Debrunner had alternatively contended the notice of default in that case was defective because it listed Old Republic as the trustee even though there was no recorded substitution of Old Republic as a trustee at the time the notice of default was recorded.  *Debrunner, supra,* 204 Cal.App.4th at 443.  The court disagreed, observing that "[California Civil Code] section 2934a provides for the situation in which a substitution of trustee is *executed* but is not *recorded* until after the notice of default is recorded." *Id*. at 443-44 (citing Cal. Civ. Code, § 2934a, subd. (b)).[3]  Plaintiffs have provided no argument or evidence to suggest a substitution of NDEx as trustee

---

[3] The statute provides in pertinent part: "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner

8

had not been executed at the time NDEx recorded the April 29, 2009 notice of default.

Even if there were a defect in NDEx's commencement of the foreclosure proceedings, Plaintiffs have failed to allege prejudice. In *Debrunner*, the court concluded that a failure to show or assert prejudice resulting from an alleged defect in the foreclosure process was fatal to the plaintiff's claims. *Debrunner, supra,* 204 Cal.App.4th at 443. " '[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests.' [¶] . . . [¶] . . . [T]here was no allegation in the first amended complaint that plaintiff's ability to contest or avert foreclosure was impaired. Even in his opposition to the demurrer and on appeal he has not identified the harm he suffered from any asserted violation of section 2934a, subdivision (b), again preferring to assume that he is entitled to judgment without any showing of prejudice." *Id.* at 444 (quoting *Fontenot v. Wells Fargo Bank, N.A.,* 198 Cal.App.4th 256, 271, 129 Cal.Rptr.3d 467 (2011)). In this case, as in *Debrunner*, Plaintiffs have provided no argument or evidence of harm resulting from the failure to record a substitution of NDEx as trustee before NDEx filed its notice of default. Accordingly, the Court finds no basis for injunctive relief on this ground. A substitution would simply have replaced one trustee with another without modifying Plaintiffs' obligations under the note or deed of trust. Under these circumstances, Plaintiffs would be hard pressed to show any conceivable prejudice, given Plaintiffs have offered no facts to suggest the substitution of NDEx (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default.

Lastly, Plaintiffs suggest a preliminary injunction should issue because Wells Fargo violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 et seq. RESPA provides in pertinent part, "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). A "qualified written

---

required by this subdivision." Cal. Civ. Code, § 2934a, subd. (b).

9

request" is correspondence that provides, or otherwise enables the servicer to identify, "the name and account of the borrower" and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.*, § 2605(e)(1)(B). Within 30 days, the servicer must provide the borrower with "a written explanation or clarification" of "the reasons for which the servicer believes the account of the borrower is correct" or "why the information requested is unavailable or cannot be obtained[.]" *Id.*, § 2605(e)(2)(B), (C). Here, Plaintiffs allege as follows:

> "On or about February 9, 2012, Plaintiffs sent a 'qualified written request' to Defendant WELLS FARGO pursuant to Section 6 of the Real Estate Settlement Procedures Act (RESPA). Plaintiffs raised certain issues regarding the improper assignment of their Note and Deed of Trust, the chain of title, Real Estate Mortgage Investment Conduit (REMIC) violations, unlawful transfer of their Note and Deed of Trust, and fraudulently forged 'robo-signed' documents. Defendant WELLS FARGO's response to Plaintiffs [sic] request merely attached a copy of the Note and Deed of Trust and did not address any substantive legal issues raised by Plaintiffs, violating its duty under RESPA to conduct an investigtion [sic]."

Copies of Plaintiffs' "qualified written request" and Wells Fargo's "response" are attached as exhibits to the motion. Problematically for Plaintiffs, neither the allegations nor the exhibits are sufficient to demonstrate a likelihood of success on the merits of their RESPA claim.

As noted above, a qualified written request (QWR) seeks information related to the "servicing" of a loan. 12 U.S.C. § 2605(e)(1)(A). RESPA defines "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Plaintiffs' February 9, 2012 letter to Wells Fargo did not, however, request information related to the servicing of their loan agreement. Nor did Plaintiffs allege errors with their account. Instead, as they explained in the complaint, Plaintiffs essentially accused Wells Fargo of unlawful conduct and advised that an action against Wells Fargo to litigate title to the East El Paso property would be imminent. Plaintiffs have provided no authority – and the Court's research reveals no authority – to suggest such a letter constituted a legitimate QWR triggering Wells Fargo's duty to respond. In

any case, Wells Fargo did respond with a letter stating Plaintiffs' loan was under review. While Plaintiffs allege Wells Fargo's response did not address the issues raised in their February 9, 2012, letter, Plaintiffs fail to explain how Wells Fargo did not comply with its RESPA obligations.

RESPA further provides in any action by an individual, "[a non-complying servicer] shall be liable to the borrower for each such failure in . . . [¶] . . . an amount equal to the sum of -- [¶] (A) any actual damages to the borrower as a result of the failure; and [¶] (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1). "Although this section does not explicitly set this out as a pleading standard, a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v. United Financial Mortg. Corp.,* 660 F.Supp.2d 1089, 1097 (N.D.Cal. 2009) (citing *Hutchinson v. Delaware Sav. Bank FSB,* 410 F.Supp.2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages")). Thus, even assuming Plaintiffs' letter qualified as a QWR, Plaintiffs were required to allege actual damages resulting from Wells Fargo's purported failure to properly respond to their February 9, 2012 letter *or* that Wells Fargo had a pattern or practice of violating RESPA. That was not done here. The Court might be inclined to agree Plaintiffs had suffered actual damages if a RESPA violation somehow led to the foreclosure proceedings (e.g., because Wells Fargo did not inform Plaintiffs of errors in their account, causing them to default). But this was obviously not the case, given that notices of default and trustee's sale had already been recorded by Wells Fargo's predecessors-in-interest well before Plaintiffs' February 2012 correspondence with Wells Fargo. In addition, the Court notes the remedies enumerated under RESPA do not include injunctive relief. Accordingly, RESPA provides no basis for the relief requested by Plaintiffs. *Ryan v. BAC Home Loans Servicing, LP,* 2010 WL 4723732 (E.D.Cal. Nov. 15, 2010) (unpublished), at *3 ("[E]ven if these RESPA claims have merit, they have no relation to the impending foreclosure sale. *See* 12 U.S.C. § 2605 (remedy for RESPA violation is monetary damages and costs, not injunctive relief)").

## V. DISPOSITION

Based on the foregoing, Plaintiffs' motion for a preliminary injunction is DENIED. Accordingly, the hearing date of June 19, 2012 is hereby VACATED.

IT IS SO ORDERED.

Dated: June 15, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE