1

2

3

4

5

6

7           **IN THE UNITED STATES DISTRICT COURT FOR THE**

8                  **EASTERN DISTRICT OF CALIFORNIA**

9

10   GURVINDER GHUMAN and              )      **1: 12 - CV - 00902 - AWI - BAM**
     PARMINDER K. GHUMAN,              )
11                                     )
                                       )      ORDER RE: MOTION TO
12              Plaintiffs,            )      DISMISS FIRST AMENDED
                                       )      COMPLAINT
13        **v.**                       )
                                       )
14   WELLS FARGO BANK, N.A., d/b/a     )      (Doc. 17)
     AMERICA'S SERVICING COMPANY;      )
15   NDeX WEST, LLC; and               )
     DOES 1 through 100, inclusive,    )
16                                     )
                                       )
17              Defendants.            )
                                       )
18   _____ )

19

20

21

22                         **INTRODUCTION**

23   Defendant Wells Fargo Bank ("Defendant") has filed a motion to dismiss the First Amended

24   Complaint of plaintiffs Gurvinder Ghuman and Parminder K. Ghuman ("Plaintiffs") pursuant to

25   Federal Rule of Civil Procedure 12(b)(6).  As to Plaintiffs' third cause of action for violation of

26   California Civil Code Section 2923.5, Defendant seeks a more definite statement of the claim

27   pursuant to Rule 12(e).

28

## FACTS[1]

On August 29, 2005, Plaintiffs signed a negotiable promissory note ("Note") in the amount of $407,600.00 in favor of Secured Bankers Mortgage Co. ("Lender").  To secure the Note, Plaintiffs also executed a Deed of Trust ("Deed of Trust"), which conveyed a security interest in the real property ("Subject Property") to Lender.  The Deed of Trust named T.D. Service Co. as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the original beneficiary.  The Deed of Trust states:

> MERS, (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

The Deed of Trust was recorded on September 2, 2005 in the Official Records of the Recorder of Fresno County, California.

On or about November 30, 2005 ("Closing Date"), Lender sold and transferred its interest in Plaintiffs' Note to the Morgan Stanley Mortgage Loan Trust, a New York mortgage-backed securities trust ("Morgan Stanley Trust"), which was registered with the Securities Exchange Commission ("SEC"). Defendant was named the Master Servicer for the Morgan Stanley Trust, and Deutsche Bank National Trust Company ("Deutsche Bank") was named the trustee. Plaintiffs allege that the Deed of Trust was not transferred to the Morgan Stanley Trust.

On or about December 7, 2007, Lender ceased conducting business.  At the time Lender ceased operations, the Note had been transferred to Morgan Stanley Trust, but the Deed of Trust was not transferred.  Plaintiffs defaulted on the subject loan in or around December 2008.

On April 29, 2009, NDeX, as "trustee or agent for the beneficiary," recorded a Notice of Default and Election to Sell against the Subject Property.  The Notice of Default was signed by Ric Juarez, purportedly an employee of NDeX.  MERS recorded an Assignment of the Deed of Trust on May 27, 2009, which conveyed a beneficial interest in the Deed of Trust to Deutsche

---

[1] All facts taken from pleadings alleged by Plaintiffs and Defendant.

Bank, the trustee of the Morgan Stanley Trust.  Defendant, acting for Deutsche Bank, named NDeX as the new trustee in a substitution recorded on June 29, 2009.  NDeX executed an affidavit dated June 15, 2009, stating that a copy of the Substitution of Trustee document was mailed prior to recording in accordance with the California Civil Code Section 2924(b).  Plaintiffs allege that such document and affidavit had never been recorded and did not meet the requirements of California Civil Code Section 2924(b).

On September 18, 2009, NDeX recorded a Notice of Trustee's Sale ("NOS") scheduled for October 6, 2009.  The sale was later postponed.  A copy of the NOS was not signed by any employee of NDeX; subsequent copies were signed by a purported employee of NDeX.  A declaration was attached to the Notice of Sale, and Plaintiffs allege that the declaration did not meet the requirements of California Civil Code Section 2923.5.  Another Notice of Sale was dated October 28, 2009, setting a new sale date of November 23, 2009.  No employee of NDeX signed this Notice of Sale.

On or about December 3, 2010, Defendant sent a letter to Plaintiffs that offered Plaintiffs the opportunity to enter into a Trial Practice Plan ("TPP").  Plaintiffs allege they had to make three trial payments on their mortgage on January 1, February 1, and March 1, 2011.  Plaintiffs allege they made the trial payments on time, but their payments were never properly credited to their mortgage loan.  Plaintiffs allege that late fees and other charges were also improperly added to the balance of their mortgage loan.

In a letter dated February 9, 2012, Plaintiffs sent Defendants a letter advising them that "litigation of this matter is imminent" and requested several categories of documents from Defendants.  Plaintiffs allege such letter was a "qualified written request" pursuant to Section 6 of the Real Estate Settlement Procedures Act ("RESPA").  Defendant responded to the letter, enclosed copies of Plaintiffs' Note and Deed of Trust, and advised Plaintiffs that their "loan is currently under review by our Home Preservation Department for a loan modification."

Defendants allege that on or about March 22, 2012, they sent a letter to Plaintiffs informing them that their loan modification was not approved until a title issue was resolved.  Defendant also sent Plaintiffs a letter informing Plaintiffs that they did not qualify for a loan

modification because of additional liens on the property.

NDeX commenced foreclosure proceedings against Plaintiffs on or about May 31, 2012. The notice was posted on Plaintiffs' property.  NDeX identified itself in the NOS as the trustee; however, the NOS signature page was unsigned.  On June 1, 2013, a new NOS with a sale date of June 25, 2012 was recorded.  The sale was postponed due to Plaintiffs' filing of the present action.

On August 28, 2012, Plaintiffs filed their first amended complaint ("FAC") asserting causes of action for (1) slander of title (against all Defendants), (2) wrongful foreclosure (against all Defendants), (3) violation of California Civil Code Section 2923.5 (against Defendant Wells Fargo), (4) violation of the Real Estate Settlement Procedures Act (against Defendant Wells Fargo), and (5) violation of the Unfair Business Practices Act Section 17200 (against all Defendants).  Defendant filed its motion to dismiss the entire FAC pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e).  Plaintiffs did not file a written opposition to Defendant's motion.

**LEGAL STANDARD**

A complaint must contain a short and plain statement showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  A court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party.  *Id.*  A party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *Parks School Of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

In making a 12(b)(6) determination, district courts have followed a two-step approach. *Bell Atlantic v. Twombly*, 550 U.S. 544, 564-570, 127 S.Ct. 1955, 167 L.Ed.2d 919 (2009).  First, district courts should carefully examine the complaint to smoke out any "merely legal conclusions resting on the prior allegations."  *Id*. at 564.  If an allegation is deemed "conclusory," it is entitled to no weight in the 12(b)(6) calculus.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).  Second, district courts should weigh the remaining facts

and determine if they are sufficient to "nudge the claims across the line from conceivable to plausible." *Bell Atlantic,* 550 U.S. at 570.  While a complaint "need not contain detailed factual allegations, it must plead enough facts to state a claim of relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Plausibility can be met even if a judge disbelieves a complaint's factual allegations. *Aschroft*, 129 S. Ct. at 1959 (stating that "no matter how skeptical the court may be... 'Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.'").  "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.* at 1949.  A 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint.  *Scheuer v. Rhodes*, 414 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## DISCUSSION

***Plaintiffs' First Cause of Action (Slander of Title)*** **-** Plaintiffs assert a cause of action for slander of title against all Defendants.  Slander of title occurs when a person, "without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof some pecuniary loss or damage." *Sumner Hill Homeowners' Association, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030, 141 Cal. Rptr. 3d 100 (2012).  The elements for this tort are 1) a publication 2) without privilege or justification, 3) direct pecuniary loss, and 4) falsity.  *Truck Ins. Exchange v. Bennett,* 53 Cal. App. 4th 75, 84, 61 Cal. Rptr. 2d 497 (1997).

Plaintiffs' FAC adequately alleges publication, the first element in a slander of title cause of action.  Plaintiffs allege that Defendants effected a publication by recording the Assignment of the Deed of Trust, Substitution of Trustee, and the Notices of Default and Trustee's Sale.  Such recording of the documents was an announcement to the world that Defendants had valid title over the subject property.  See *Seeley v. Seymour*, 190 Cal.App.3d 844, 858, 237 Cal.Rptr. 282,

5

289 (1987) (stating that the recorded instrument "was reasonably understood by third parties as an announcement... to all the world").

Second, Plaintiffs' FAC adequately alleges that the publication was made "without privilege or justification."  The California Supreme Court has held that "a rival claimant of property is conditionally privileged to disparage or justified in disparaging another's property in land by an honest and good-faith assertion of an inconsistent legally protected interest in himself." *Gudger v. Manton*, 21 Cal.2d 537, 545, 134 P.2d 217 (1943) (overruled on other grounds by *Albertson v. Raboff*, 21 Cal.2d 537 (1943)).  However, an "express finding of lack of good faith... would destroy the privilege or justification here discussed." *Id*. at 546.  Plaintiffs allege that Defendants' recording of the documents was "knowingly wrongful," i.e. Defendants' intentional misconduct stripped them of such privilege. Doc. 15, FAC, 10: 22-24.  Broadly construing Plaintiffs' FAC, it would be fair to conclude that Plaintiffs have alleged sufficient facts to satisfy this element of slander of title at the 12(b)(6) stage.

Third, Plaintiffs' FAC adequately alleges that Plaintiffs suffered "direct pecuniary loss" from such publication.  The Restatement Second of Torts describes this element:  "[T]he pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and (b) *the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.*"  Restatement (Second) of Torts § 633 (1977) (italics added).  California courts have adopted the Restatement definition of pecuniary damages for purposes of a slander of title cause of action.  *Sumner Hill*, 205 Cal.App.4th at 1030; see also *Appel v. Buman*, 159 Cal.App.3d 1209, 1215 (1984).

Plaintiffs allege that Defendants' publication "directly impairs the vendibility of Plaintiffs' Subject Property on the open market" and caused Plaintiffs to incur costs related to bringing "this action to cancel the instruments casting doubt on Plaintiffs' title."  The "direct pecuniary loss" element is satisfied because "it is well-established that attorney fees and litigation costs are recoverable as pecuniary damages in slander of title causes of action when...

litigation is necessary 'to remove the doubt cast' upon the vendibility or value of plaintiff's property." *Sumner Hill*, 205 Cal. App. 4th at 1030; see also *Barrionuevo v. Chase Bank*, _ F.Supp.2d _, 2012 WL 3235953, *9 (N.D. Cal. 2012); *Seeley v. Semour,* 190 Cal.App.3d 844, 864, 237 Cal.Rptr. 282 (damages include "the expense of legal proceedings necessary to remove the doubt cast by the disparagement").

However, Plaintiffs fail to sufficiently plead falsity, the last element required for a slander of title cause of action. Plaintiffs allege that Defendants' publication was false because MERS' authority to assign the Deed of Trust to Deutsche Bank terminated when the Lender ceased doing business. Plaintiffs contend that according to the Deed of Trust, MERS could only act *for* the Lender because the Deed states that MERS' duty was to act "solely as nominee *for* Lender and Lender's successors and assigns." Doc. 18, Ex. 2, at 1 (italics added). Plaintiffs further allege that MERS' authority to assign the Deed of Trust terminated when the Lender ceased conducting business and any act by MERS concerning the Deed of Trust after that time period is invalid. According to Plaintiffs, MERS assigned the Deed of Trust to Deutsche Bank after the Lender ceased operations, and so such assignment is invalid. Plaintiffs further allege that the Substitution of Trustee and the Notices of Trustee's Sale were also invalid under the same reasoning. From this, Plaintiffs contend that Defendant falsely represented that it owned the Subject Property through the filing of invalid documents. Compare *M.F. Farming, Co. v. Couch Distributing Co.*, 207 Cal.App.4th 180, 199 (2012).

Plaintiffs' allegations do not demonstrate falsity because courts have recognized MERS' broad authority to act under title as nominee, with or without a Lender's consent. See *In re Cedano*, 470 B.R. 522, 531 (9th Cir. 2012) ("The transfer of the Note as part of the securitization process [does] not affect MERS' right as a nominee under the Deed of Trust."); see also *Benham v. Aurora Loan Services*, 2009 WL 2880232 (N.D. Cal. 2009) ("Other courts in this district have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the Deed of Trust when the original promissory note is assigned to a trust pool."). Applying this same theory, the fact Lender became defunct did not strip MERS' authority to act under the Deed of Trust.

Additionally, Plaintiffs fully acknowledged and agreed to MERS' authority to act under the Deed of Trust.  The Deed of Trust provides that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, *releasing and canceling this Security Instrument.*"  Doc. 18, Ex. 2, at 3 (italics added).

Such language shows that Plaintiffs were put on notice regarding MERS' broad powers to act under the Deed of Trust and consented to such authority.

Accordingly, because Plaintiffs fail to establish falsity for a slander of title cause of action, Plaintiffs have not met their burden to plead sufficient facts that allow "the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949.  Defendant's Motion to Dismiss on this cause of action shall be granted with leave to amend.

***Plaintiff's Second Cause of Action (Wrongful Foreclosure)*** - Plaintiffs assert a second cause of action for wrongful foreclosure against all Defendants.  Initially, it should be noted that it is apparent from the documents and pleadings before the court that no foreclosure sale has occurred.  As no sale has occurred, Plaintiffs' claim for wrongful foreclosure is premature.  See *Rosenfeld v. J.P. Morgan Chase Bank,* 732 F.Supp.2d 952, 961 (N.D. Cal. 2010).

"Wrongful foreclosure is an action in equity where a plaintiff seeks to set aside a foreclosure sale." *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1097 (E.D. Cal. 2010).  "A trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent, or willfully oppressive sale of property under the power of sale contained in the mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323, 326 (1970); see also *Alvarado v. Bank of America, N.A.*, 2013 WL 28584, at *9 (E.D. Cal. 2013).

Plaintiffs allege that "Defendant NDeX is not the present trustee under Plaintiffs' Deed of Trust and has no legal authority to act as trustee" because the 2009 Assignment of Deed of Trust from MERS to Deutsche Bank failed.  As noted above, Plaintiffs further allege that MERS' assignment to Deutsche Bank failed because MERS assigned the Deed of Trust when the Lender was already defunct.  Doc. 15, FAC, 11: 13-22.

However, courts have generally given the nominee of a lender broad powers to act, with or without consent from the lender.  Section 2924(a)(1) of California's non-judicial foreclosure statute permits a "trustee, mortgagee or beneficiary or any of their authorized agents" to "conduct the foreclosure process." *Lane,* 713 F.Supp.2d at 1098.  California's non-judicial foreclosure statute is a "comprehensive statutory framework established to govern non-judicial foreclosure sales and is intended to be exhaustive." *Id*. at 1098; *Moeller v. Lien*, 25 Cal.App.4th 822, 832 (1994).  Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.  See *Moeller*, 25 Cal.App.4th at 834.  No stated requirement in California's non-judicial foreclosure scheme requires a beneficial interest in the Note to foreclosure.  *Id.*  Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate a non-judicial foreclosure.  *Id.*  In other words, MERS has broad power to act as nominee of a lender.  Plaintiffs have provided no authority and the Court's research reveals no authority to suggest this power is affected when a lender becomes defunct.

MERS' broad powers to act is further cemented by the Ninth Circuit's holding in *In re Cedano* that continual assignment of the beneficial interest under the Deed of Trust will not affect MERS' authority.  This holding suggests that MERS' authority is seemingly independent.  The Ninth Circuit stated:

"MERS remains the beneficiary of record of the Deed of Trust or mortgage even as the beneficial interest is assigned repeatedly within MERS's electronic system. Therefore, the transfer of the Note as part of a securitization process did not affect MERS's right as a nominee under the DOT [Deed of Trust]." *In re Cedano*, 470 B.R. at 531.

One might argue that *In re Cedano* involved a lender who had not defuncted and is therefore

inapposite.  However, the holding grants to MERS authority to act and make decisions regardless of who the lender is. See *Lam v. JP Morgan Chase Bank, N.A.* 2012 WL 5827785, *3 (E.D. Cal. 2012) (Holding that MERS did not lose its power of sale pursuant to a deed of trust even when the original promissory note was assigned to a trust pool.); see also *Castenada v. Saxon Mortgage Services Inc.*, 687 F.Supp.2d 1191, 1198 (E.D. Cal. 2009).  Important from this holding is the idea that the status of the lender is arguably insignificant to MERS' authority to act.  Thus, in our present case, because the power of MERS as nominee under the Deed of Trust was not impaired in any way by the Lender becoming defunct, there is no basis upon which the subsequent assignment of the Deed of Trust to Deutsche Bank can be found invalid.  Plaintiffs' allegations regarding the invalidity of said assignment are unfounded.

Additionally, Plaintiffs acknowledged and agreed to give MERS such rights by signing the Deed of Trust.  The terms of the Deed of Trust allows for the Note to be "sold one or more times without prior notice to the Borrower," and that such sales "might result in a change in the entity (known as the 'loan servicer') that collects Periodic Payments due under the Note... and perform other mortgage loan servicing obligations."  Doc. 18, Ex.2 at 3.  The Deed of Trust further provides that the "lender, at its option, may from time to time appoint a successor trustor to any Trustee appointed hereunder."  *Id.*

It is a general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly, or unlawfully conducted.  *Bank of America National Trust and Savings Association v. Reidy*, 14 Cal.2d 243, 248, 101 P.2d 77 (1940).  Notwithstanding the fact that no sale has occurred, Plaintiffs fail to show any fraud or unfair or unlawful procurement of the Deed of Trust by Deutsche Bank.

**a. Violation of California Civil Code Section 2932.5**

Under the cause of action for wrongful foreclosure, Plaintiffs also allege that Defendants failed to comply with California Civil Code Section 2932.5.  Section 2932.5 states that:

"Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security

and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded." Cal. Civ. Code Sec. 2932.5. Thus, in order for Plaintiffs to allege a violation of Section 2932.5, they must allege that NDeX had no authority to execute the sale because the assignment was not duly acknowledged and recorded or because NDeX was not an assignee.

Defendant Wells Fargo, acting for Deutsche Bank, named NDeX the new trustee in a substitution recorded June 29, 2009. Plaintiffs allege that NDeX was not the present trustee under the Deed of Trust because the assignment from MERS to Deutsche Bank failed. However, as the Court previously concluded, MERS did have authority to assign the Deed of Trust even after the Lender ceased operations. Therefore, the transfer between MERS and Deutsche Bank was presumptively valid. After such assignment, NDeX, as trustee, executed the Notice of Trustee's Sale against the Subject Property. The execution by NDeX was permitted because a foreclosure action may be initiated by a trustee. See *Roque v. Suntrust Mortgage, Inc.*, 2010 WL 546896, *3 (N.D. Cal. 2010) ("Trustees regularly foreclose on behalf of assignees for the original beneficiary.").

Plaintiffs also allege that NDeX lacked authority to issue the Notice of Default because the Deed of Trust had not been assigned to Deutsche Bank at the date of issuance of the Notice. Doc. 15, FAC, 11:13-22. This argument is not persuasive. As stated earlier, under California law, a foreclosure may be commenced when "the trustee, mortgagee, or beneficiary, *or any of their authorized agents* shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part of parcel thereof is situated, a notice of default." Cal. Civ. Code Sec. 2924(a)(1) (italics added). In signing the agreement, Plaintiffs acknowledged and agreed to MERS' right to "exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and *to take any action required of Lender* including, but not limited to *releasing* and canceling this Security Instrument." Doc. 18, Ex. 2 at 3 (italics added). Therefore, MERS was authorized to assign the Deed of Trust to Deutsche Bank.

Plaintiffs also allege that NDeX never recorded the Substitution of Trustee document. Doc. 15, FAC, 12: 28.  However, Defendants have provided the court a copy of such document, of which the Court takes judicial notice.  Doc. 18, Ex. 5.  The document was recorded with the Fresno County Reporter on June 29, 2009 and directly contradicts Plaintiffs' allegations.  While inconsistencies between the allegations and the judicially noticed document do not preclude Plaintiffs from potentially stating a claim, absent some compelling explanation why inconsistencies exist, Plaintiffs will not be permitted to proceed.

Accordingly, for the foregoing reasons, the court shall grant Defendants' Motion to Dismiss Plaintiffs' wrongful foreclosure cause of action with leave to amend.

***Plaintiffs' Third Cause of Action (Violation of California Civil Code Section 2923.5)*** - Plaintiffs assert a third cause of action against Defendant Wells Fargo for violation of California Civil Code Section 2923.5, specifically Sections 2923.5(a)(2) and 2923.5(b).  Section 2923.5 concerns the crucial step in the foreclosure process: the recording of a Notice of Default as required by Section 2924.  *Mabry v. Superior Court*, 185 Cal.App.4th 208, 220-21 (2010). California Civil Code Section 2923.5(a)(2) requires a "mortgagee, beneficiary, or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code Sec. 2923.5(a)(2).  Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with the section, including an attempt "with due diligence to contact the borrower."  Cal. Civ. Code Sec. 2923.5(b).

Plaintiffs allege that the Declaration attached to the Notice of Default stating that someone tried with due diligence to contact them as required by Section 2923.5 is false because although signed under oath, the signer lacked personal knowledge of whether Plaintiffs were ever contacted.  Plaintiffs further allege they were not contacted as required.  Doc. 15, FAC, 13: 19-27.

However, Section 2923.5 does not require that Defendant must successfully contact Plaintiffs. It merely requires that Defendant attempt such contact with "due diligence."  The plain

12

language of Section 2923.5 states specifically that a "notice of default... shall include a declaration that the mortgager servicer has contacted the borrower" or "*has tried with due diligence to contact the borrower*."  Cal. Civ. Code Sec. 2923.5(b) (italics added).  Unlike the circumstances in *Mabry*, where the appellate court noted that the parties disagreed over whether or not actual contact was made and so remanded the case to the trial court for an evidentiary hearing, the signer did not aver that Defendant had successfully contacted Plaintiffs; the signer only averred that Defendant had tried with due diligence to comply with the statute.

Additionally, Section 2923.5 does not require that the compliance statement be signed by a person with personal knowledge.  *Mabry*, 185 Cal.App.4th at 233.  The California Court of Appeal reasoned that:

> "The way section 2923.5 is set up, too many people necessarily involved in the process for any one person to likely be in the position where he or she could swear that all three requirements of the declaration required by (b) were met. We note, for example, that subdivision (a)(2) requires any one of three entities (a "mortgagee, beneficiary, or authorized agent") to contact the borrower, and such entities may employ different people for that purpose. And the option under the statute of no contact being required further involves individuals who would, in any commercial operation, probably be different from the people employed to do the contacting."  *Mabry,* 185 Cal.App.4th at 233.

In sum, Defendant was not required to actually contact Plaintiffs nor have a person with personal knowledge sign the compliance statement; therefore, Plaintiffs have failed to plead facts sufficient to show a violation of Section 2923.5.  Accordingly,  Defendant's Motion to Dismiss Plaintiffs' third cause of action shall be granted with leave to amend.

***Plaintiffs' Fourth Cause of Action (Real Estate Settlement Procedures Act)*** - Plaintiffs allege a fourth cause of action against Defendant Wells Fargo for a violation of RESPA.  A plaintiff alleging a violation of RESPA must show that (1) the servicer failed to adhere to the rules governing a qualified written request and (2) the plaintiff incurred actual damages as a consequence of the servicer's failure.  See 12 U.S.C. § 2605; see also *Anokhin v. BAC Home*

13

*Loan Servicing, L.P.*, 2010 WL 3294367, at *3 (E.D. Cal. 2010).  Section 2605 of RESPA provides that loan servicers have a duty to respond to qualified written requests ("QWR") within a certain time frame, and RESPA provides an avenue for borrowers to seek damages if the servicer fails to meet its duty to respond.  12 U.S.C. § 2605(e).

Plaintiffs alleges that:

"WELLS FARGO violated RESPA as servicer on Plaintiffs' mortgage loan by its failure to meaningfully respond to Plaintiffs' qualified written request pursuant to Section 6, 12 U.S.C. 2605(e), and by failing to properly administer Plaintiffs' mortgage loan account (including but not limited to failing to properly credit for trial payments, failure to negotiate loan modification in good faith, and charging improper fees and other charges)." Doc. 15, FAC, 14: 16-22.

Defendant contests the legitimacy of the February 9, 2012 letter as a QWR.  Defendant notes that the Court had previously ruled on Plaintiffs' motion for a preliminary injunction regarding the letter and found that it did not request information relating to the servicing of their loan agreement or allege errors with Plaintiffs' account.  Plaintiffs provided no authority to suggest that the letter constituted a legitimate QWR.

Under RESPA, a communication is a QWR where it is a written correspondence that contains "the name and account of the borrower" and a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12. U.S.C. § 2605(e)(1)(B).  Congress intended for RESPA to protect consumers, and it would be "inconsistent with Congress's intent that the statute serve a broad remedial purpose" to find that a QWR must contain some "magic" words.  *Medrano v. Flagstar Bank, FSB*, 2012 WL 6183549, *3 (9th Cir. 2012).

The 9th Circuit has made clear that servicers cannot rely on technical arguments to disregard requests for information that pertain to servicing.  *Medrano*, 2012 WL at *3.  The 9th Circuit specifically endorsed the 7th Circuit's holding in *Catalan v. GMAC Mortgage Corporation*, in which that court wrote:

14

"Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus trigger the servicer's obligation to respond." *Catalan*, 629 F.3d 676 (7th Cir. 2011).

That said, the requirement that the letter must request information relating to the *servicing* of the loan ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers. *Medrano,* 2012 WL 6183549 at *3. The 9th Circuit has stated that correspondence to a servicer is not a QWR if it relates to subjects other than the servicing of the loan, where "servicing" meant "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts, and making the payments of principal and interest and such other payments." *Id*. at *1; see also 12 U.S.C. § 2605(i)(3). The statute distinguishes between letters that relate to a borrowers' disputes regarding service and those regarding the borrower's contractual relationship with the lender. *Id*. at *2. Letters that challenge the validity of a loan's terms are not QWRs giving rise to a duty to respond. *Id*. at *4.

In the February 9, 2012 letter, Plaintiffs asserted that Defendant "cannot show proper receipt, possession, transfer, negotiations, and ownership" of the original Note and Deed of Trust, and "thus, the security interest and claims are imperfect." Plaintiffs also alleged that the foreclosing entity lacked an ownership interest in the property based on "lack of conveyance from the original lender," unlawful transferring of the Note and Deed of Trust, and fraudulently forging documents based on "robo-signing". These allegations are challenges to the terms of the mortgage documents and not related to servicing of the loan. Therefore, the letter is presumptively not a QWR. See *Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1014 (N.D. Cal. 2009) (RESPA claim dismissed because letter simply disputed the validity of the loan and not its servicing.).

Even assuming, arguendo, that the February 9, 2012 letter constituted a QWR, Plaintiffs fail to satisfy the second requirement of showing that they incurred actual damages attributable to

Defendant's failure to respond.  See *Allen v. United Financial Mortgage Corp.*, 660 F.Supp.2d 1089, 1096 (N.D. Cal. 2009) ('Alleging a breach of RESPA duties alone does not state a claim under RESPA.'); see also *Mekani v. Homecomings Financial, LLC*, 752 F.Supp.2d 785, 795 (E.D. Cal. 2010) (stating that "Plaintiffs' RESPA claim fails for the additional reason that Plaintiff has alleged no actual damages attributable to Defendant's alleged failure to respond").  "Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." *Allen*, 660 F.Supp.2d at 1096.  A RESPA claim's failure to allege a pecuniary loss resulting from a failure to respond is fatal to the claim. *Id*.

Here, Plaintiffs merely assert that "they have been damaged in an amount not yet ascertainable, to be proven at trial."  Doc. 15, FAC, 14: 23-24.  Courts have rejected statements by plaintiffs where damages were pled as "unascertainable" in a RESPA cause of action.  *Mekani*, 752 F.Supp.2d at 795 (Dismissing RESPA claim even though "Plaintiff does mention the concept of damages; Plaintiffs' RESPA claim [did] not speak to damages in his response to Defendant's motion, except to state that the damages cannot be determined until Plaintiff has had opportunity to conduct discovery.").

Additionally, this Court previously dismissed Plaintiffs' RESPA cause of action in the original complaint. The court stated that:

> " Plaintiffs' conclusory assertion they sent Defendant a 'qualified written request' does not, without more, establish it was a QWR within the meaning of RESPA triggering Defendants' duty to respond... Plaintiffs' conclusory assertion Defendant 'violated RESPA... by its failure to meaningfully respond' is also insufficient to show Defendant did not comply with any RESPA obligations it may have had.  Plaintiffs likewise fail to explain how Defendant 'failed to properly administer Plaintiffs' mortgage account."  Doc. 14, 5: 24-26; Doc. 14, 6: 1-4.

Plaintiffs' RESPA allegations in its FAC is nearly identical to their previously dismissed RESPA claim.

The original complaint alleged that Defendant violated RESPA by failing to meaningfully respond and by failing to properly administer Plaintiffs' mortgage account (including escrow

reserves and payments) whereas the FAC alleges that Defendant violated RESPA by failing to meaningfully respond and by failing to properly administer Plaintiffs' mortgage loan account (including but not limited to failing to properly credit for trial payments, failure to negotiate a loan modification in good faith, and charging improper late fees and other charges).  The FAC also alleges damages that are unascertainable.  The RESPA allegations in the FAC still fail to show that the information Plaintiffs requested related to the servicing of their loan agreement.  In addition,  similar to the Court's previous ruling on this matter, "Plaintiffs' conclusory assertion that Defendant 'violated RESPA... by its failure to meaningfully respond' is also insufficient" to show that Defendant did not comply with RESPA.

Plaintiffs have failed to plead a plausible RESPA claim; therefore, Defendant's motion to dismiss this claim will be granted with leave to amend.  See *Champlaie v. BAC Home Loans Servicing, LP.,* 706 F.Supp.2d 1029, 1054 (E.D. Cal. 2009) ("If plaintiff may allege... that his letter to BAC sought information regarding loan servicing, or that CHL failed to disclose or inaccurately disclosed particular information required by RESPA, plaintiff may amend this claim.")

***Plaintiffs' Fifth Cause of Action (Violation of Business and Professions Code* Section 17200, *et. seq.)*:** Plaintiffs assert a fifth cause of against all Defendants for violating California Business and Professions Code Section 17200 (known in California as the "Unfair Competition Law" or "UCL").  This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant.  *Burachek v. Chase Home Finance, LLC.*, 2012 WL 3778970, *11 (E.D. Cal. 2012).  California's Unfair Competition Law requires businesses to refrain from unfair competition.  See Business and Professions Code Section 17200.  Unfair competition refers to practices that are unlawful, unfair, or fraudulent.  *Id.* (stating that unfair competition is "any unlawful or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"); see also *In re Tobacco I Cases*, 46 Cal.4th 298, 311, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009).  A business practice that is unlawful, unfair, or fraudulent is a violation of California's Unfair Competition Law.

A violation of an 'unlawful' business practice requires a plaintiff to assert a violation of another law.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).  "Virtually any law - federal, state, or local - can serve as a predicate for a section 17200 action."  *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1103-03, 53 Cal.Rptr.2d 229 (1996) (abrogated on other grounds by *Cel-Tech Communications, Inc.,* 20 Cal.4th at 180).  Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state an unfair competition law claim either.  *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001).

The second variety of unfair competition is an 'unfair' business practice.  'Unfair' business practice is "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cal-Tech Communications*, 20 Cal.App.4th at 187.  The 'unfair' standard is "intentionally broad to allow courts to have maximum discretion to prohibit schemes to defraud."  *Countrywide Financial Corp. v. Bundy,* 187 Cal.App.4th 234, 257, 113 Cal.Rptr.3d 705 (2010).  However, the unfairness prong of this cause of action "does not give the courts a general license to review the fairness of contracts."  *Samura v. Kaiser Found Health Plan*, 17 Cal.App.4th 1286, 1299, 22 Cal.Rptr.2d 20 (1993).

Lastly, the third variety of unfair competition is a 'fraudulent' business practice.  A business practice is 'fraudulent' where there is "deception to some members of the public, or harm to the public interest,"  *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099 1121 (C.D. Cal. 2001), or that "members of the public are likely to be deceived."  *Medical Instrument Development Laboratories v. Alcon Laboratories,* 2005 WL 1926673, *5 (N.D. Cal. 2005).

Plaintiffs allege that Defendants Wells Fargo and NDeX violated California's Unfair Competition Law because they "failed to contact the Plaintiffs at least thirty days prior to initiating foreclosure proceedings through the Notice of Default in violation of Section 2923.5, filed a Notice of Default supported by declarations that failed to comply with Section 2923.5, and

failed to provide properly endorsed, notarized documentation by employees with actual knowledge of Plaintiffs' mortgage loan when initiating and proceeding with the non-judicial foreclosure of subject property." Doc. 15, FAC, 15: 12-20.

However, Plaintiffs have failed to allege facts sufficient to plead a violation of California's Unfair Competition Law because they did not show that Defendants's actions were unfair, fraudulent, or forbidden by law.  Additionally, Plaintiffs predicated their unlawful business practice allegations on 'borrowed law' from California Civil Code Section 2923.5.  However, the court previously addressed that claim and found that Plaintiffs did not plead enough facts to plausibly allege a Section 2923.5 violation.  Therefore, Plaintiffs are unable to bring a claim for violation of California's Unfair Competition Law.

Accordingly, because Plaintiffs have alleged none of the three varieties of unfair competition under California's Unfair Competition Law, Defendant's Motion to Dismiss on this cause of action must be granted with leave to amend.


**CONCLUSION AND ORDER**

Defendant's Motion to Dismiss all causes of action in the FAC is hereby GRANTED with leave to amend as to them.  Plaintiffs shall have one final opportunity to amend.


IT IS SO ORDERED.

Dated:    February 12, 2013            _____
                                              SENIOR  DISTRICT  JUDGE