IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

GURVINDER GHUMAN and
PARMINDER K. GHUMAN,

          Plaintiffs,

    v.

WELLS FARGO BANK, N.A., d/b/a
AMERICA'S SERVICING COMPANY;
NEeX WEST, LLC; and DOES 1 through
100, inclusive,

          Defendants.

_____/

1:12-cv-00902-AWI-BAM

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED
COMPLAINT**

(Doc. 39)

## I. INTRODUCTION

      Defendant, Wells Fargo Bank, N.A. ("Defendant"), has filed a motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to strike pursuant to Federal Rule of Civil Procedure 12(f). The motion is unopposed. For the following reasons this Court grants in part and denies in part Defendant's motion to dismiss. This Court denies Defendant's motion to strike.

///

1

## II. FACTUAL BACKGROUND[1]

On August 29, 2005, Plaintiffs signed a negotiable promissory note ("Note") in the amount of $407,600.00 in favor of Secured Bankers Mortgage Co. ("Lender").  To secure the Note, Plaintiffs also executed a Deed of Trust ("Deed of Trust"), which conveyed a security interest in the real property located at 1644 East El Paso, Fresno, CA 93720, ("Subject Property") to Lender.  The Deed of Trust named T.D. Service Co. as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the original beneficiary.  The Deed of Trust states:

> MERS, (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

The Deed of Trust was recorded on September 2, 2005 in the Official Records of the Recorder of Fresno County, California.

On or about November 30, 2005 ("Closing Date"), Lender sold and transferred its interest in Plaintiffs' Note to the Morgan Stanley Mortgage Loan Trust, a New York mortgage-backed securities trust ("Morgan Stanley Trust"), which was registered with the Securities Exchange Commission ("SEC"). Defendant was named the Master Servicer for the Morgan Stanley Trust, and Deutsche Bank National Trust Company ("Deutsche Bank") was named the trustee. Plaintiffs allege that the Deed of Trust was not transferred to the Morgan Stanley Trust.

On or about December 7, 2007, Lender ceased conducting business.  At the time Lender ceased operations, the Note had been transferred to Morgan Stanley Trust, but the Deed of Trust was not transferred.  Plaintiffs defaulted on the subject loan in or around December 2008.

---

[1] All facts are taken from the pleadings of Plaintiffs and Defendant. The factual background is given to provide a backdrop; the assertions contained therein are not necessarily taken as true. The legally relevant facts relied upon by the court are discussed within the analysis.

2

On April 29, 2009, NDeX, as "trustee or agent for the beneficiary," recorded a Notice of Default and Election to Sell against the Subject Property.  The Notice of Default was signed by Ric Juarez, purportedly an employee of NDeX.  MERS recorded an Assignment of the Deed of Trust on May 27, 2009, which conveyed a beneficial interest in the Deed of Trust to Deutsche Bank, the trustee of the Morgan Stanley Trust.  Defendant, acting for Deutsche Bank, named NDeX as the new trustee in a substitution recorded on June 29, 2009.  NDeX executed an affidavit dated June 15, 2009, stating that a copy of the Substitution of Trustee document was mailed prior to recording in accordance with the California Civil Code Section 2924(b).  Plaintiffs allege that such document and affidavit had never been recorded and did not meet the requirements of California Civil Code Section 2924(b).

On September 18, 2009, NDeX recorded a Notice of Trustee's Sale ("NOS") scheduled for October 6, 2009.  The sale was later postponed.  A copy of the NOS was not signed by any employee of NDeX; subsequent copies were signed by a purported employee of NDeX.  A declaration was attached to the Notice of Sale, and Plaintiffs allege that the declaration did not meet the requirements of California Civil Code Section 2923.5.  Another Notice of Sale was dated October 28, 2009, setting a new sale date of November 23, 2009.  No employee of NDeX signed this Notice of Sale.

On or about December 3, 2010, Defendant sent a letter to Plaintiffs that offered Plaintiffs the opportunity to enter into a Trial Practice Plan ("TPP").  Plaintiffs allege they had to make three trial payments on their mortgage on January 1, February 1, and March 1, 2011.  Plaintiffs allege they made the trial payments on time, but their payments were never properly credited to their mortgage loan.  Plaintiffs allege that late fees and other charges were also improperly added to the balance of their mortgage loan.

In a letter dated February 9, 2012, Plaintiffs sent Defendants a letter advising them that "litigation of this matter is imminent" and requested several categories of documents from Defendants.  Plaintiffs allege such letter was a "qualified written request" pursuant to Section 6 of the Real Estate Settlement Procedures Act ("RESPA").  Defendant responded to the letter,

1    enclosed copies of Plaintiffs' Note and Deed of Trust, and advised Plaintiffs that their "loan is

2    currently under review by our Home Preservation Department for a loan modification."

3      Defendants allege that on or about March 18, 2012, they sent a letter to Plaintiffs

4    informing them that their loan modification was not approved until a title issue was resolved.

5    Defendant also sent Plaintiffs a letter informing Plaintiffs that they did not qualify for a loan

6    modification because of a junior lien on the property by Bank of America. A subordination

7    agreement could not be reached with Bank of America.

8      NDeX commenced foreclosure proceedings against Plaintiffs on or about May 31, 2012.

9    The notice was posted on Plaintiffs' property.  NDeX identified itself in the NOS as the trustee;

10   however, the NOS signature page was unsigned.  On June 1, 2013, a new NOS with a sale date

11   of June 25, 2012 was recorded.  The sale was postponed from June 25 to July 25, 2013, due to

12   Plaintiffs' filing of the present action.

13     Mr. Ghuman filed for bankruptcy on July 25, 2012. The bankruptcy court dismissed

14   Mr. Ghuman's petition in August 2012 due to his failure to submit the required documents.

15     During the pendency of this litigation, the Ghumans claim to have continued to seek a

16   loan modification. Plaintiffs claim that "[d]uring November to December, 2012, the parties

17   began a new loan modification process." Plaintiffs do not allege that they submitted to

18   Defendants any notice of change in financial circumstances or that any such change took place.

19   On January 28, 2013, NDeX, as trustee for Wells Fargo, served a Notice of Sale on Plaintiffs,

20   setting a foreclosure sale date of February 25, 2013. On February 2, 2013, Plaintiffs claim to

21   have "provided a completely updated loan modification package to Defendant" Wells Fargo.

22     On or about February 24, 2013, Wells Fargo informed Plaintiffs that the loan

23   modification package submitted on February 2, 2013, was incomplete. Plaintiffs, through their

24   counsel, submitted documents on Saturday, March 16, 2013, that Wells Fargo, through its

25   counsel, claims to have requested on February 21, 2013.

26     The trustee's sale has not yet taken place.

27

28   ///

4

### III. PROCEDURAL BACKGROUND

On June 1, 2012, plaintiffs, Gurvinder Ghuman and Parminder Ghuman ("Plaintiffs") filed, with this Court, their Complaint against Defendants. Plaintiffs alleged causes of action for (1) declaratory relief, (2) contractual breach of the implied covenant of good faith and fair dealing, (3) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., (4) violation of the Real Estate Settlement Procedures Act, 1 U.S.C. §§ 2601 et seq., (5) rescission, (6) fraud, (7) "Unfair and Deceptive Business Act Practices," (8) breach of fiduciary duty and (9) "unconscionability – UCC-2-3202." Plaintiffs alleged that subject matter jurisdiction existed pursuant to 28 U.S.C. Sections 1331 (federal question) and 1332 (diversity of citizenship).

On July 4, 2012, defendant Wells Fargo Bank, N.A. ("Defendant") filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs did not file a written opposition to Defendant's motion to dismiss. This Court granted Defendant's motion to dismiss, giving Plaintiffs leave to amend.

On August 28, 2012, Plaintiffs filed their First Amended Complaint ("FAC") asserting causes of action for (1) slander of title (against all Defendants), (2) wrongful foreclosure (against all Defendants), (3) violation of California Civil Code Section 2923.5 (against Defendant Wells Fargo), (4) violation of the Real Estate Settlement Procedures Act (against Defendant Wells Fargo), and (5) violation of the Unfair Business Practices Act Section 17200 (against all Defendants).

On October 18, 2012, Defendant filed its motion to dismiss the FAC pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e).  Plaintiffs did not file a written opposition to Defendant's motion. This Court granted Defendant's motion to dismiss, giving Plaintiffs one final opportunity to amend.

On April 14, 2013, Plaintiffs filed their Second Amended Complaint ("SAC") asserting causes of action for (1) violation of RESPA (against Defendant Wells Fargo), and (2) violation of California Civil Code Sections prohibiting Dual Tracking (against all defendants).

1     On June 7, 2013, Defendant filed its motion to dismiss the SAC pursuant to Rule 12(b)(6)

2  or to strike the second cause of action pursuant to Rule 12(f). Plaintiffs did not file a written

3  opposition to Defendant's motion.

## IV. LEGAL STANDARD

5     A complaint must contain a short and plain statement showing that the pleader is entitled

6  to relief. Fed. R. Civ. P. 8(a)(2). A court must take all allegations of material fact as true and

7  construe them in the light most favorable to the nonmoving party. *Id.* A party may move to

8  dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ.

9  P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the

10  claims alleged. *Parks School Of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

11     In making a 12(b)(6) determination, district courts have followed a two-step approach.

12  *Bell Atlantic v. Twombly*, 550 U.S. 544, 564-570 (2009). First, district courts should carefully

13  examine the complaint to smoke out any "merely legal conclusions resting on the prior

14  allegations." *Id*. at 564. If an allegation is deemed "conclusory," it is entitled to no weight in the

15  12(b)(6) calculus. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Second, district courts should

16  weigh the remaining facts and determine if they are sufficient to "nudge the claims across the

17  line from conceivable to plausible." *Bell Atlantic,* 550 U.S. at 570. While a complaint "need not

18  contain detailed factual allegations, it must plead enough facts to state a claim of relief that is

19  plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

20     Plausibility can be met even if a judge disbelieves a complaint's factual allegations.

21  *Aschroft*, 556 U.S. at p. 696. (stating that "no matter how skeptical the court may be... 'Rule

22  12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual

23  allegations.'"). "A claim has facial plausibility," and thus survives a motion to dismiss, "when

24  the pleaded factual content allows the court to draw a reasonable inference that the defendant is

25  liable for the misconduct alleged." *Id.* at pp. 663, 678. "The plausibility standard is not akin to a

26  'probability requirement,' but it asks for more than sheer possibility that a defendant acted

27  unlawfully." *Id.* at p. 678. A 12(b)(6) analysis is "not whether a plaintiff will ultimately

28

1  prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in

2  his or her complaint. *Scheuer v. Rhodes*, 414 U.S. 544, 555 (2007).

3       In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

4  to reviewing only the complaint. "There are, however, two exceptions: ... First, a court may

5  consider material which is properly submitted as part of the complaint on a motion to dismiss ....

6  [i]f the documents are not physically attached to the complaint, they may be considered if the

7  documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.

8  Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record."

9  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *See also In re Stac Electronics*,

10  89 F.3d. 1399, 1405, fn. 4 (9th Cir. 1996).  The Ninth Circuit later gave a separate definition of

11  "the 'incorporation by reference' doctrine, which permits us to take into account documents

12  whose contents are alleged in a complaint and whose authenticity no party questions, but which

13  are not physically attached to the plaintiff's pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076

14  (9th Cir. 2005).  Moreover, "judicial notice may be taken of a fact to show that a complaint does

15  not state a cause of action."  *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67,

16  70 (9th Cir. 1956); see *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir.

17  1997).[1]

18       If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without

19  prejudice, and with or without leave to amend."[A] district court should grant leave to amend

20  even if no request to amend the pleading was made, unless it determines that the pleading could

21  not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

22  Cir. 2000) (en banc) (quoting *Doe. v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  In other

23

24

---

25  [1] Defendant's request that the Court take judicial notice of the Note, Deed of Trust, Notice of Default and Election
    to Sell Under Deed of Trust, Assignment of Deed of Trust, Substitution of Trustee, Notices of Trustee's Sale,
26  letter from America's Servicing Company dated December 3, 2010, letter from Plaintiffs dated February 9, 2012,
    Corporate Assignment of Deed of Trust, and Chapter 13 bankruptcy petition, is granted.  *See Sears*, 245 F.2d at
27  70; *Lee*, 250 F.3d at 688-89.  Here, Plaintiffs' complaint refers all of the aforementioned documents in the SAC
    with the exception of the Corporate Assignment of Deed of Trust and the Chapter 13 bankruptcy petition. SAC at
    ¶¶ 1, 15-17, 19-22, 25, 27. The documents not mentioned by the SAC are matters of public record and not
28  generally subject to dispute.  As such, this court may consider all of the aforementioned documents for purposes
    of Defendant's motion to dismiss pursuant to Rule 12(b)(6).

1  words, leave to amend need not be granted when amendment would be futile.  *Gompper v. VISX,*

2  *Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

3

4                                    **V. DISCUSSION**

5  ***A. Plaintiffs' First Cause of Action - RESPA***

6         Plaintiffs assert a cause of action for violation of RESPA, 12 U.S.C. § 2601, et seq.,

7  against defendant Wells Fargo. A plaintiff alleging a violation of RESPA's loan servicing

8  provisions must show that (1) the servicer failed to adhere to the rules governing a qualified

9  written request and (2) the plaintiff incurred actual damages as a consequence of the servicer's

10  failure. See 12 U.S.C. § 2605; see also *Anokhin v. BAC HomeLoan Servicing, L.P.,* 2010 WL

11  3294367, at *3 (E.D. Cal. 2010).

12  *1. Plaintiffs' Letter Is Neither a Qualified Written Request Nor Does it Relate to the Servicing of*

13  *the Loan*

14         Section 2605 of RESPA provides that loan servicers have a duty to respond to qualified

15  written requests ("QWR") relating to the servicing of such loan within a certain time frame,[2] and

16  RESPA provides an avenue for borrowers to seek damages if the servicer fails to meet its duty to

17  respond. 12 U.S.C. § 2605(f).

18         The Ninth Circuit, following in the footsteps of the Seventh Circuit, does not require any

19  "magic" words in order for a document from a borrower to qualify as a qualified written request.

20  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) *cert. denied,* 133 S. Ct. 2800

21  (2013); *Catalan v. GMAC Corp*., 629 F.3d 676, 687 (7th Cir. 2011). A borrower's written inquiry

22  requires a response as long as it (1) reasonably identifies the borrower's name and account, (2)

23  either states the borrower's "reasons for the belief ... that the account is in error" or "provides

24

---

25  [2] If subject to Section 2605's duty to respond, Wells Fargo would have been required to acknowledge receipt of the correspondence within up to 20 days and, within up to 60 days, (1) to make appropriate corrections to the account,

26  (2) to explain why it believed the account to be correct, or (3) to explain why the information requested was unavailable or could not be obtained and the name and telephone number of an individual employed by the

27  services who can provide assistance. 12 U.S.C. § 2605(e)(1)(A), (e)(2), (e)(4). All three of the options triggered by Section 2605(e)(2) require the servicer to provide the borrower the name and telephone number of an

28  individual employed by the servicer who can provide assistance.

1  sufficient detail to the servicer regarding other information sought by the borrower," and (3)

2  seeks "information relating to the servicing of [the] loan." *Medrano,* 704 F.3d at p. 666 (quoting

3  12 U.S.C. § 2605(e)(1)(A)-(B) (brackets original)).

4          The Ninth Circuit clarified what types of inquiries qualify as seeking "information

5  relating to the servicing of the loan" as follows:

> [T]he statutory duty to respond does not arise with respect to *all* inquiries
> or complaints from borrowers to servicers, [only as to those requests
> related to servicing]. RESPA defines the term "servicing" to encompass
> only "receiving any scheduled periodic payments from a borrower
> pursuant to the terms of any loan, including amounts for escrow accounts
> ..., and making the payments of principal and interest and such other
> payments." *Id.* § 2605(i)(3). "Servicing," so defined, does not include the
> transactions and circumstances surrounding a loan's origination—facts that
> would be relevant to a challenge to the validity of an underlying debt or
> the terms of a loan agreement … In summary, we hold that letters
> challenging only a loan's validity or its terms are not qualified written
> requests that give rise to a duty to respond under § 2605(e).

14  *Medrano,* 704 F.3d at pp. 666-667. Accordingly, in order to have triggered a duty to respond

15  pursuant to Section 2605, Plaintiffs must have identified themselves and their account number,

16  explained their belief that the account was in error or explained the information sought, and

17  sought information relating to the servicing of the loan. RESPA defines "servicing" to mean

18  "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan

19  … and making the payments of principal and interest and such other payments with respect to

20  the amounts received from the borrower as may be required pursuant to the terms of the loan."

21  12 U.S.C. § 2605(i)(3).

22          In their February 9, 2012 letter, Plaintiffs identify themselves, the property address, and

23  their account number, thereby satisfying the first requirement. Further, Plaintiffs' letter

24  articulates five complaints[3]: (1) improper assignment of promissory note and deed of trust, (2)

25  chain of title, (3) REMIC Violations, (4) unlawful transfer of note and deed of trust, and (5)

26  robo-signing. None of the five complaints articulated in Plaintiffs' letter allege errors with the

27

28  [3] The holding that these complaints do not qualify as "reasons for the belief ... that the account is in error" which
would satisfy Section 2605(e)(1)(B)(ii) is not essential to the outcome of this dismissal.

9

1  loan account. Further, the letter contains no indication that Plaintiffs sought information relating

2  to the servicing of the loan. *Ghuman v. Wells Fargo Bank, N.A.*, 2012 WL 552097 at * 11 (E.D.

3  Cal. 2012); *see Consumer Solutions REO, LLC. V. Hillery,* 658 F.Supp.2d 1002, 1014 (N.D. Cal.

4  2009). Rather, the Plaintiffs advised Defendant of "the various [alleged] illegalities on the part of

5  the securitization of [their] loan," proposed a settlement, and indicated that litigation would

6  result if a settlement was not reached. Request for Judicial Notice ("RJN"), Exhibit 9 at p. 1-2.

7  Accordingly, Wells Fargo had no duty to respond since Plaintiffs' letter is neither a QWR,

8  because it does not allege errors with the loan account or seek production of information, nor

9  does it meet the Section 2605(e)(1)(A) requirement that the borrower, in their QWR, seek

10  information relating to the servicing of the loan. Each failure is independently fatal to Plaintiffs'

11  RESPA claim.

12  *2. Plaintiffs Fail to Adequately Allege Facts Establishing Damages*

13       Assuming, arguendo, as the Court did when Plaintiffs' failed to state a claim in the FAC,

14  that the February 9, 2012 letter constituted a QWR giving rise to a duty to respond, Plaintiffs'

15  fail to make a showing that they incurred actual damages attributable to Defendant's failure to

16  respond.

17       Plaintiffs' RESPA claim as alleged in their FAC alleged damages as follows: "Plaintiffs

18  have been damaged in an amount not yet ascertained, to be proven at trial." FAC at ¶ 20.

19  Plaintiffs alleged that these damages arose as a result of Defendant's "fail[ure] to properly credit

20  trial payments, failure to negotiate a loan modification …, and charging improper late fees…"

21  FAC at ¶ 19. This Court held that Plaintiffs failed to adequately pled damages attributable to

22  Defendant's failure to respond. *Ghuman,* 2012 WL 552097 at * 11 (citing *Mekani v.*

23  *Homecomings Financial, LLC*, 752 F.Supp.2d 785, 795 (E.D. Cal. 2010).

24       Plaintiffs' FAC modifies their RESPA claim by removing the language relating to

25  Defendant's alleged failure to properly credit trial payments and charging of late fees from a

26  parenthetical clause and rewriting it into its own paragraph. Plaintiffs' allegations as to damages

27  remain unchanged from the FAC. In this Court's order dismissing the FAC it noted that

28  "Planitiffs' RESPA allegations in its FAC [are] nearly identical to their previously dismissed

1  RESPA claim." *Ghuman,* 2012 WL 552097 at * 12   Why Plaintiffs believe that this non-
2  substantive amendment would be sufficient to adequately plead damages is unclear. It isn't.
3  Plaintiffs' conclusory allegations and damages pled as "unascertainable" are again inadequate.
4  *3. Conclusion*

5        Plaintiffs have failed to plead a plausible RESPA claim for the third time; each attempt
6  essentially mirroring the last. Accordingly, Defendant's motion to dismiss this claim is granted
7  without leave to amend.

8  **B. Plaintiffs' Second Cause of Action – Homeowners Bill of Rights**

9        Plaintiffs, for the first time in the SAC, plead a cause of action alleging violation of
10  California Civil Code Sections 2923.55, 2923.6, 2924.10-12, 2924.17, and 2924.18, commonly
11  known as the Homeowners Bill of Rights ("HOBR"), which prohibits, among other things, "dual
12  tracking" of the foreclosure and loan modification processes. FAC at ¶ 7. HOBR became
13  effective on January 1, 2013. It provides a private right of action for homeowners to litigate
14  violations of loan modification application procedures. Plaintiffs allege that Defendants have
15  attempted to foreclose on the Subject Property during active loan modification negotiations. FAC
16  at ¶ 7. Further, Plaintiffs seek injunctive relief pursuant to Section 2924.12 based on Defendant's
17  alleged failure to give notice of receipt of loan modification application documents in violation
18  of Section 2924.10. FAC at ¶¶ 1, 11.

19  *1. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims*

20        "[I]n any civil action of which the district courts have original jurisdiction, the district
21  courts shall have supplemental jurisdiction over all other claims that are so related to claims in
22  the action within such original jurisdiction that they form part of the same case or controversy
23  under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, the power to
24  exercise supplemental jurisdiction is within the court's discretion. *United Mine Workers of*
25  *America v. Gibbs,* 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent
26  jurisdiction is a doctrine of discretion, not of plaintiff's right."). The court "may decline to
27  exercise supplemental jurisdiction over a claim under subsection (a) if the claim raises a novel or
28  complex issue of state law, the claim substantially predominates over the claim or claims over

1   which the district court has original jurisdiction, [or] the district court has dismissed all claims

2   over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(1-3); see *Gibbs*, 383 U.S. at p. 726

3   ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a

4   jurisdictional sense, the state claims should be dismissed as well."); *Acri v. Varian Assocs., Inc.*,

5   114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("The Supreme Court has stated, and we have often

6   repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the

7   balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-

8   law claims.' ") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Unless

9   the court is persuaded by "considerations of judicial economy, convenience and fairness to

10  litigants" it must "hesitate to exercise jurisdiction over state claims [.]" *Gibbs*, 383 U.S. at p. 726.

11          Here, Plaintiffs alleged violations of TILA and RESPA in their original complaint.

12  Plaintiffs have been given three opportunities to state a claim for violation of federal law.

13  Plaintiffs, as discussed above, have three times failed to do so. Plaintiffs' new cause of action

14  does not arise from the same transaction or occurrence but is rather an alleged violation arising

15  from Plaintiffs' continued attempts to seek a loan modification.

16          Under the circumstances, the court declines to exercise supplemental jurisdiction over

17  plaintiff's remaining state law claims since this Court has dismissed all claims over which it has

18  original jurisdiction and Plaintiffs raise at least one novel or complex of state law. *See, e.g.,*

19  *Downs v. Monetary Mgmt. of Cal. Inc.,* 2000 WL 335949, at *2 (N.D. Cal. 2000) (noting that

20  where federal claims have been disposed of, "the court has discretion whether to continue to

21  exercise its jurisdiction [and] [i]t may choose either to dismiss the state law claims or remand the

22  action to state court").

23                                              **VI. ORDER**

24          Based on the foregoing, Defendant's motion to dismiss is GRANTED in part and

25  DENIED in part. Plaintiffs' RESPA Cause of Action is DISMISSED with prejudice.

26          This Court declines to exercise supplemental jurisdiction over Plaintiffs' HOBR Cause of

27  Action. Plaintiffs' HOBR Cause of Action is therefore DISMISSED without prejudice for lack of

28  subject matter jurisdiction.

1    Defendant's motion to strike is DENIED.

2    The Clerk of the Court is DIRECTED to close this case.

3

4   IT IS SO ORDERED.

5   Dated:   January 3, 2014

           _____
                  SENIOR  DISTRICT  JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28